UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LEONARD BASSO,

                *Plaintiff,*

v.                                   No. 3:21-cv-00811

WILLOW RUN FOODS, INC.,

                *Defendant.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

KARPF, KARPF & CERUTTI, P.C.     ADAM C. LEASE, ESQ.
*Attorneys for Plaintiff*
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

HINMAN, HOWARD & KATTELL, LLP    JAMES J. GLEASON, ESQ.
*Attorneys for Defendant*
80 Exchange Street
P.O. Box 52500
Binghamton, NY 13902-5250

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Leonard Basso ("Basso" or "plaintiff") brings this action against

defendant Willow Run Foods, Inc. ("Willow Run," the "company," or

"defendant").  Plaintiff, a former employee of defendant, brings claims

against the company for violations of the Americans with Disabilities Act, 42

U.S.C. §§ 12101-213 ("ADA"), the Age Discrimination in Employment Act, 29

U.S.C. §§ 621-34 ("ADEA"), and the Family and Medical Leave Act, 29

U.S.C. §§ 2601-654 ("FMLA").

Willow Run moves pursuant to Federal Rule of Civil Procedure ("Rule")

12(b)(1) and 12(b)(6) for partial dismissal of Basso's amended complaint.  The

motion having been fully briefed, the Court will now consider it on the basis

of the parties' submissions without oral argument.

## II. <u>BACKGROUND</u>

### A. <u>Basso and his Health Condition</u>

Since approximately 1986, Basso has lived with Crohn's Disease, a

disability which can cause diarrhea, constipation, severe abdominal pain,

fatigue, and emotional impairment.[1]  Dkt. 10 ("Am. Compl.") ¶ 20.  Plaintiff's

health condition limits him in certain activities, such as working, walking,

bending, lifting items, and performing manual tasks.  *Id.* ¶ 21.  Due to his

health condition, plaintiff has undergone several surgical procedures and

hospitalizations.  *Id.* ¶ 23.  Plaintiff requested and utilized reasonable

---

[1]   The facts are taken from the amended complaint and any and all documents attached to it, because for the purposes of Rule 12(b)(1) and 12(b)(6) motions, this Court must accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from it in the light most favorable to the plaintiff.  *See Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353 (2d Cir. 2020).

medical accommodations under the ADA in connection with some of these procedures.  *Id.*

### B. Basso's Employment with Willow Run

Before his termination, Basso had worked at Willow Run, a New York-based food distributor, since September 2000.  Am. Compl. ¶ 11.  Plaintiff alleges that he was a high-performing employee who did not have a history of "progressive discipline," and that he received positive evaluations, pay raises, and several promotions throughout his career.  *See id.* ¶¶ 12-13.  In 2012, Willow Run promoted plaintiff to Vice President of Operations ("VPO"), a role in which he supervised approximately 320 employees.  *Id.* ¶ 14.  Plaintiff remained in the VPO role until his July 20, 2020 termination, as discussed further below.  *Id.* ¶ 15.

At all times relevant to this case, Terry Wood, Willow Run's Chief Executive Officer and President, served as Basso's supervisor. Am. Compl. ¶ 16.  Plaintiff alleges that throughout his tenure with Willow Run, Wood "displayed extreme unprofessionalism and created a hostile and precarious work environment, including but not limited to exhibiting discriminatory treatment towards minorities and women."  *Id.* ¶ 17.  Wood also subjected Basso to discriminatory and retaliatory treatment because of his disability, age, and because he engaged in protected activity under the ADA and ADEA.  *Id.* ¶ 19.

3

According to Basso, Willow Run's management was never receptive to his health condition, limitations, or need for accommodations and often treated him in a "very discriminatory and hostile manner" because of his Crohn's Disease.  Am Compl. ¶ 24.

For instance, around December 2014, Basso required an invasive surgery because of his Crohn's Disease.  *Id*. ¶ 25.  In connection with this surgery, plaintiff's physician recommended a 60-day medical leave to allow for proper recovery.  *Id*.  When plaintiff advised Wood of his need for a 60-day medical leave, Wood responded by stating "[w]ell how soon do you think you can get back?"  *Id*. ¶ 26.  Plaintiff, "[i]n fear of responding any other way," told Wood that he would return "as soon as possible."  *Id*.  While plaintiff was on medical leave, defendant required him to continue answering routine phone calls, responding to emails, and participating in weekly meetings.  *Id*. ¶ 27.  Defendant never compensated plaintiff for the work he performed while on medical leave.  *Id*.

Approximately 30 days into his requested 60-day medical leave, Basso returned to work part-time against his physician's orders.  Am. Compl. ¶ 28.  Plaintiff returned to work even though he was still experiencing residual pain and discomfort from his surgery because he was fearful that Willow Run would fire him if he remained on leave.  *Id*.

Basso ultimately returned to work full-time in early February 2015. Am. Compl. ¶ 29.  However, on February 24, 2015, plaintiff required another surgical procedure related to his Crohn's Disease.  *Id.* ¶ 30.  Following this surgery, plaintiff did not return to work full time until March 9, 2015.  *Id.*  As with plaintiff's prior surgery, Willow Run and its staff "inundated [him] with emails and phone calls such that he felt compelled to work because of certain directives given by Woods during this time."  *Id.* ¶ 31.

In 2020, Basso required additional medical procedures related to his Crohn's Disease.  Am. Compl. ¶ 32.  For instance, in March 2020, plaintiff underwent surgery for which he requested an approximately two-month medical leave of absence.  *Id.* ¶ 33.  While on this medical leave and recovering from his surgery, Wood expected plaintiff to continue working without compensation and reminded plaintiff that he remained responsible for his departments twenty-four hours a day, seven days a week.  *Id.* ¶ 34. Fearful he would be fired, plaintiff followed Wood's directives and worked from home, responding to work-related phone calls and emails, participating in weekly staff meetings, and purchasing a laptop at Wood's encouragement to assist with his remote work.  *Id.* ¶¶ 35-37.

Wood allegedly tried to conceal that he directed Basso to work while on medical leave.  Am. Compl. ¶ 38.  For instance, on April 9, 2020, plaintiff noted that his name was missing from the records of a weekly meeting from

5

the day prior. *Id.* ¶ 39. When plaintiff asked Krista Dickerson, the Dispatch Manager, why the meeting records did not note his presence, Dickerson replied that Wood instructed her to redact his name and comments from all weekly meetings, but that she "did not feel that was right." *Id.* ¶ 39. When plaintiff inquired with Wood about his directions to Dickerson, Wood explained that he was not permitted to work while on medical leave and Willow Run could not have any documentation evidencing otherwise. *Id.* ¶ 40.

Following his discussion with Wood, Basso contacted Willow Run's Vice President of Human Resources, Carol Wallis, to discuss medical accommodations for remote work and/or plaintiff temporarily returning to in-person work on a part-time basis. Am. Compl. ¶ 41. Defendant had accommodated plaintiff working on a part-time basis previously, and from March 2020 through April 2020, he had already been performing work remotely at the direction of defendant's management. *Id.* ¶ 43. However, Wallis informed plaintiff that Wood would not accommodate him on a work-from-home or part-time basis and that plaintiff's only option was to return to work full-time. *Id.* ¶ 42.

In early April 2020, because of his interactions with Wood and his discussion with Wallis, plaintiff complained to Wallis that he believed Willow Run was discriminating against him on the basis of his disability.

6

Am. Compl. ¶ 45.  Wallis neither investigated plaintiff's complaints nor provided any remedial action.  *Id.* ¶ 46.  On April 15, 2020, despite defendant refusing to provide plaintiff with work-from-home accommodations, Dickerson delivered meeting notes to plaintiff for him to review and modify. *Id.* ¶ 47.

Basso returned to work from medical leave on May 6, 2020.  Am. Compl. ¶ 49.  Upon plaintiff's return, Wood would rarely communicate with him, gave directives to plaintiff's staff which contradicted his directives, and generally treated him in a rude and demeaning manner.  *Id.* ¶ 49.

Towards the end of Basso's time at Willow Run, he also experienced negative treatment that he alleges was based on his advanced age (he was 60 years old at the time of his termination).  Am. Compl. ¶¶ 51-52.  Plaintiff alleges that, unlike with younger employees on his team, Wood generally refused to communicate with him, would disparage plaintiff and treat him in a hostile manner, and would reference his age in connection with his ability to perform the work of a VPO.  *Id.* ¶ 53.

Additionally, on July 9, 2020, Wood summoned Basso to his office for a meeting in which he inquired about his age.  Am. Compl. ¶ 53.  When plaintiff responded that he was 60 years old, Wood expressed an interest in hiring younger, qualified individuals and discussed the approximate age of applicants that Willow Run was interviewing at the time.  *Id.*  Sometime

7

between this meeting and plaintiff's termination, Wood also noted he had "big plans" for Michael Cacialli, an approximately 30-year-old Transportation Supervisor.  *Id.*

### C. **Basso's Termination**

On July 20, 2020, Wood asked Basso if he had given any consideration to retiring.  Am. Compl. ¶ 54.  When plaintiff responded "no" and asked Wood why he asked, Wood stated that plaintiff was "old enough" and that he was giving plaintiff an option to retire.  *Id.*  Plaintiff then asked what would happen if he did not retire, to which Wood replied that the other option would be "Plan B" and that he had "not gotten to Plan B yet."  *Id.*  Following this exchange with Wood, plaintiff informed Wallis he would be taking the remainder of the day off, as his Crohn's Disease had been exacerbated by stress.  *Id.* ¶ 55.

The same day, Basso's then-attorney sent Wood and Wallis a letter on plaintiff's behalf asserting that Willow Run was discriminating against him because of his age and disability, and stating that he intended to sue the company for discrimination under the ADA and ADEA.  Am. Compl. ¶ 56. According to plaintiff, Wood decided to fire him only after receiving this letter.  *Id.* ¶ 57.

Following Basso's July 20, 2020 termination, he received a letter from Willow Run dated July 23, 2020 detailing his benefits upon separating from

the company and his final paycheck.  Am. Compl. ¶ 58.  Defendant did not list a reason for plaintiff's termination in the letter, but wrote that "[t]his letter will also confirm that the discontinuation of employment is not based on the result of any misconduct by Willow Run Foods, Inc." and instructed plaintiff to sign the letter if it reflected his understanding.  *Id.* ¶ 59.  Plaintiff did not sign the letter.  *Id.*

On September 3, 2020, Basso filed his administrative charge with the New York State Division of Human Rights (the "Division of Human Rights").  *See* Dkt. 12-2.[2]  On February 25, 2021, the Division of Human Rights issued a Determination and Order After Investigation, which dismissed plaintiff's administrative charge.  *See* Dkt. 12-3, at 5.  On April 21, 2021, the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter informing plaintiff that it had "adopted the findings of the state or local fair employment practices agency that investigated [the] charge."  *See* Am. Compl., Ex. A.

---

[2] Defendant has submitted plaintiff's administrative charge as Exhibit A to its motion to dismiss. It is well-settled that the Court may take judicial notice of such charges, as well as their associated documents, for purposes of the motion to dismiss.  *See, e.g.*, *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by defendant, the court takes judicial notice of plaintiff's EEOC charge on a motion to dismiss") (cleaned up); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) ("since the EEOC charge is a public document filed in an administrative proceeding, and is integral to plaintiff's ADA claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are [properly considered on a motion to dismiss]").

## III. **LEGAL STANDARD**

"To survive a Rule 12(b)(6) motion to dismiss, the 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of a complaint, it is "to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540.  The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## IV. **DISCUSSION**

In his amended complaint, Basso brings: (i) ADA claims for disability discrimination, retaliation, hostile work environment, and failure to accommodate; (ii) FMLA claims for interference and retaliation; and (iii) ADEA claims for age discrimination and retaliation.

Willow Run moves to dismiss so much of Basso's amended complaint that alleges conduct occurring outside of certain applicable limitations periods. Defendant also moves to dismiss portions of Count I of the amended complaint for failure to state a claim.

### A. <u>Allegations from Outside Applicable Statutes of Limitations</u>

Willow Run argues that Basso's factual allegations from December 2014 through March 9, 2015 are time-barred as they pertain to his ADA and ADEA claims and that allegations of events occurring before September 2, 2017 are time barred as they pertain to his FMLA claims. Except as to plaintiff's ADA hostile work environment claim, the Court generally agrees.

### 1. ADA and ADEA Claims

The ADA and ADEA have, at most, 300-day statutes of limitations for filing a charge with the EEOC after the alleged unlawful practice occurred. *See* 42 U.S.C. § 12117(a) (citing 42 U.S.C. § 2000e-5); 29 U.S.C. § 626(d)(1). Where a plaintiff alleges discrete discriminatory or retaliatory acts, "such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).

However, this 300-day limitation does not apply to hostile work environment claims. *See Zhou v. Roswell Park Cancer Inst. Corp.*, 2021 WL

4272286, at *2 (W.D.N.Y. Sept. 21, 2021); *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019).  "[A]s long as any act contributing to the hostile work environment claim falls within the 300-day period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"  *Zoulas*, 400 F. Supp. 3d at 50 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

Basso filed his administrative charge with the EEOC on September 3, 2020, *see* Dkt. 12-2, but his amended complaint includes factual allegations of acts from December 2014 through March 2015, *see* Am. Compl. ¶¶ 25-32.[3] Applying the 300-day limitations period, the discrete acts outlined in these allegations were time-barred by early January 2015 at the latest.  Thus, plaintiff may not rely on paragraphs 25 through 32 of his amended complaint to support his ADA claims of disability discrimination, retaliation, or failure to accommodate, or either of his ADEA claims.[4]

---

[3] Plaintiff argues that these allegations "relate to his disability, as well as the disability discrimination which he was being subjected to with his first and second medical leaves."  MTD Opp. at 15.  To the extent plaintiff is claiming that these discrete allegations of discrimination can be considered a continuing violation, that argument fails.  *See Milani v. Int'l Bus. Machines Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004) (citing *Morgan*, 536 U.S. 101 at 114) ("[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act, and even serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine") (cleaned up).

[4] While the Court will not consider the allegations in paragraphs 25 through 32 when assessing plaintiff's ADA claims of disability discrimination, retaliation, or failure to accommodate, or either of his ADEA claims, it may still consider these allegations more broadly as background.  *See Davis-Garett*, 921 F.3d at 42 ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim"); *see also Antrobus v. New York City Health & Hosps. Corp.*, 2021 WL 964438, at *9 (S.D.N.Y. Mar. 15, 2021) (considering only allegations of

The analysis differs with respect to Basso's ADA hostile work environment claim.  If any alleged act contributing to this claim falls within the 300-day limitations period, the Court may consider the entire time period of the hostile environment for the purposes of determining liability.  *See Zoulas*, 400 F. Supp. 3d at 50.  In other words, the amended complaint must include allegations relating to the hostile work environment claim that occurred within 300 days of September 3, 2020 – that is, on or after November 8, 2019.  The Court finds allegations falling within this timeframe that could relate to a hostile work environment claim.  *See, e.g.*, Am. Compl. ¶¶ 33-35; 39-40.  Accordingly, plaintiff is not barred from relying on actions occurring before November 8, 2019 to support his ADA hostile work environment claim.

### 2.  FMLA Claims

The standard statute of limitations for interference and retaliation claims under the FMLA is two years for non-willful violations, 29 U.S.C. § 2617(c)(1), or three years for "willful" violations, *id.* § 2617(c)(2).  These limitations periods run from the date of the last event constituting the alleged violation for which the action is brought.  *See id.* §§ 2617(c)(1)-(2).  The continuing violations doctrine, which allows plaintiffs to recover for time-barred conduct in certain circumstances, does not apply to FMLA claims.

conduct within limitations period when assessing ADEA claims, but noting that the court would consider other allegations of discrimination and retaliation, even if untimely, where they were relevant to assessing a timely claim).

*See, e.g.*, *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 464 n. 14 (S.D.N.Y. 2011) (noting that the "weight of authority leans decidedly against" applying the continuing violation doctrine to the FMLA); *Shepard v. United States*, 2009 WL 3106554, at *1 (E.D. Mich. Sept. 18, 2009) ("[T]here is no legal precedent for applying the continuing violations doctrine to FMLA claims").[5]

Basso alleges willful violations of the FMLA, *see* Am. Compl. ¶ 73, so the three-year limitations period applies to his claims. Working backward from the date of plaintiff's July 20, 2020 termination, he may rely on allegations dating back to July 20, 2017 to support his FMLA claims.

### B. Plaintiff's ADA Disability Discrimination Claim

Willow Run next argues that Basso fails to state a claim for disability discrimination under the ADA. The Court disagrees.

To state a claim for disability discrimination under the ADA, a plaintiff must plausibly allege that: (1) the defendant is subject to the relevant statutes; (2) he suffers from a disability within the meaning of the statute; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse

---

[5] Even if the continuing violation doctrine applied in FMLA cases, it would not under the facts alleged here. "The continuing violation doctrine applies to cases involving specific discriminatory policies or mechanisms," and "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Smith*, 769 F. Supp. 2d at 464 n.14 (citing *Valtchev v. City of New York*, 400 Fed. App'x. 586, 588–89 (2d Cir.2010)). Plaintiff neither alleges defendant has a "specific discriminatory polic[y]" that violates the FMLA, nor "an ongoing unlawful employment practice" of violating the FMLA. *See id.*

employment action because of his disability.  *See McMillian v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).  An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).[6]  A plaintiff must plead facts plausibly supporting that a "minimal inference of discriminatory motivation" existed in connection with the adverse employment action.  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Willow Run challenges only the last element of Basso's disability discrimination claim, arguing: (i) that his allegations amount to "vague, ordinary workplace unpleasantness, not an adverse employment action," and (ii) that he fails to connect any alleged conduct to discriminatory animus related to disability.

Willow Run's first assertion, that Basso fails to allege an adverse employment action, is simply incorrect.  Plaintiff clearly states that defendant fired him on July 20, 2020.  Am. Compl. ¶¶ 54-57.  This is sufficient to allege an adverse employment action.  *See Davis*, 804 F.3d at 235; *see also Limauro v. Consol. Edison Co. of New York, Inc.*, 2021 WL

---

[6] Examples of such materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Davis*, 804 F.3d at 235.

466952, at *7 (S.D.N.Y. Feb. 9, 2021) (finding that plaintiff sufficiently satisfied last element of disability discrimination claim because "[g]etting fired certainly qualifies as an adverse employment action").

Willow Run's second argument, that Basso fails to link his firing to a discriminatory motivation, also fails.  To support a discriminatory animus, plaintiff alleges that: (i) defendant treated non-disabled employees more favorably than him, Am. Compl. ¶ 50; (ii) defendant expected him to work while on medical leave, *id.* ¶¶ 34, 38[7]; (iii) defendant denied his requested accommodations, *id.* ¶¶ 42-47; (iv) defendant treated him poorly when he returned from medical leave, *id.* ¶ 49; and (v) the timing of plaintiff's termination gives rise to an inference of discrimination, *id.* ¶ 50.

Willow Run only appears to challenge two of these allegations.  First, defendant argues that paragraph 50 of Basso's amended complaint is conclusory and devoid of specific factual allegations.  Second, defendant claims that the two-and-a-half-month period between plaintiff's return to work from medical leave and getting fired is "too attenuated to establish an inference of discrimination."

Neither of these arguments warrant dismissal of Basso's ADA disability discrimination claim at this stage.  While paragraph 50 would benefit from

---

[7] Plaintiff points to additional paragraphs concerning defendant's treatment of his medical leaves.  However, as discussed *supra*, these allegations fall outside of the limitations period, and the Court does not consider them with respect to plaintiff's disability discrimination claim.

additional specific factual allegations, it is merely one of several paragraphs that support a discriminatory animus.  Taken together, plaintiff's five sets of allegations plausibly support the requisite "minimal inference of discriminatory motivation" as required under *Littlejohn*, particularly those allegations in paragraphs 42 through 47 concerning defendant's denial of plaintiff's requested accommodations.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) ("We have ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of' his disability").

Moreover, although some courts in other contexts have found that two-and-a-half-months between a protected activity and the adverse employment action is insufficiently close to connect the two events, *see, e.g.*, *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998), other courts have found gaps as distant as thirteen months sufficient to suggest a causal relationship, *see Stokes v. City of Mount Vernon, N.Y.*, 2012 WL 3536461, at *8 (S.D.N.Y. Aug. 14, 2012).

Accordingly, Willow Run's motion to dismiss Basso's ADA claim for disability discrimination must be denied.

### C. <u>Plaintiff's ADA Hostile Work Environment Claim</u>

Lastly, Willow Run seeks dismissal of Basso's ADA hostile work environment claim on two grounds: (i) plaintiff did not exhaust his

administrative remedies with respect to this claim[8]; and (ii) plaintiff has not plausibly alleged a claim of discrimination based on hostile work environment.  The Court agrees with defendant's first grounds for dismissal and does not reach the second.

Before commencing an action in federal court alleging violations of the ADA, a plaintiff must first file a timely charge with the EEOC.  42 U.S.C. § 12117.  The purpose of the exhaustion requirement "is to provide an opportunity for the resolution of discrimination complaints by means of 'conciliation, conference, and persuasion.'"  *Hamzik*, 859 F. Supp. 2d at 277 (citing *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990)).  It also gives the agency "the opportunity to investigate, mediate, and take remedial action."  *Id.* (citing *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985)).

Claims not raised in an EEOC charge may nonetheless be deemed exhausted if they are "reasonably related" to claims that were in fact raised

---

[8] Defendant invokes Rule 12(b)(1) in their argument for dismissal of plaintiff's hostile work environment claim.  However, exhausting administrative remedies is a "precondition to bringing a [suit] in federal court, rather than a jurisdictional requirement."  *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 n.9 (N.D.N.Y. 2012) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).  Therefore, this argument is properly raised as a failure to state a claim under Rule 12(b)(6) rather than as a lack of subject matter jurisdiction under Rule 12(b)(1).  *Id.* (citing *Fichera v. State Univ. of N.Y.*, 2007 WL 2874450, at *3 (N.D.N.Y. Sept. 27, 2007).  Moreover, although the failure to exhaust administrative remedies is normally asserted in an answer as an affirmative defense, it may be raised on a motion to dismiss where "the complaint itself establish[es] the circumstances required as a predicate to a finding" that the affirmative defense applies.  *Jordan*, 928 F. Supp. 2d at 594 n.5.

in the charge.  *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008)

(citing *Butts v. City of New York Dep't of Hous. Preservation and Dev.*, 990

F.2d 1397, 1402 (2d Cir. 1993)).  A claim is reasonably related to the EEOC

charge where: (1) the conduct complained of would fall within the scope of the

EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination; (2) the plaintiff is alleging retaliation by an

employer against an employee for filing an EEOC charge; or (3) a plaintiff

alleges further incidents of discrimination carried out in precisely the same

manner alleged in the EEOC charge.  *See Butts*, 990 F.2d at 1402–03.  For

the first of these three categories (and the only one applicable here), courts

"focus on the factual allegations made in the EEOC charge" to determine

whether the charge "gave th[e] agency adequate notice to investigate

discrimination on the [newly alleged basis]."  *Mathirampuzha*, 548 F.3d at

76-77.

When examining reasonable relation in the context of newly alleged

hostile work environment claims, the Second Circuit has emphasized that

"[h]ostile environment claims are different in kind from discrete acts."

*Mathirampuzha*, 548 F.3d at 77.  Instead, a hostile work environment is

created "[w]hen the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment."  *Harris v. Forklift Sys.*, 510

U.S. 17, 21 (1993) (cleaned up).  In addition, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotations and citations omitted).

Basso did not assert a hostile work environment claim in his administrative charge, nor are there any allegations that Willow Run subjected him to a hostile work environment.  However, plaintiff offers several allegations which are purportedly "closely related" to such a claim. The Court is unconvinced.

The only allegation plaintiff points to in his charge that seemingly could relate to a hostile work environment claim is that plaintiff witnessed Willow Run engage in a "pattern of discrimination."  *See* Dkt. 12-2, ¶ 5.  Yet, in support of this alleged pattern, plaintiff offers but a single discrete example, and it involves a discriminatory statement concerning women and minorities, not himself.  *See id.*  It is unclear how such discrimination against *other people*, from *other protected groups*, could alter the conditions of plaintiff's employment with respect to his disability.  *See Harris*, 510 U.S. at 21.  It also strains reason that a claim referencing a single discriminatory statement made about people from unrelated protected groups would give an agency adequate notice to investigate an alleged hostile work environment against an entirely different person.  *See Mathirampuzha*, 548 F.3d at 76-77.

The other claims Basso cites from his administrative charge are even more unrelated to his hostile work environment claim.  Indeed, at least three of the charges concern plaintiff's own thoughts or actions without any reference to employment conditions created by Willow Run or its employees.  *See* Dkt. 12-2, ¶ 7 (plaintiff feared defendant would terminate his employment); *id.* ¶ 11 (plaintiff complained of disability discrimination during his employment); *id.* ¶ 13 (plaintiff returned to work full-time one week earlier than his scheduled return).  Even the charges plaintiff cites that do involve conduct on the part of defendant or its employees lack the "concerted," *Terry*, 336 F.3d at 148, or "intimidat[ing], ridcul[ing], and insult[ing]," *Harris*, 510 U.S. at 21, qualities that ordinarily signal a hostile working environment.  *See* Dkt. 12-2, ¶ 8 (plaintiff was inundated with emails and phone calls while recovering from surgery); *id.* ¶ 9 (defendant required plaintiff to participate in weekly staff meetings while out on medical leave); *id.* ¶ 13 (Wood acted in a hostile manner towards plaintiff); *id.* ¶ 17 (defendant denied plaintiff reasonable accommodations).  The Court cannot infer that the reviewing agencies would have divined a hostile work environment charge from these allegations.

Accordingly, the claims Basso raised in his administrative charge are not reasonably related to his hostile work environment claim.  Plaintiff did not

exhaust his administrative remedies with respect to this claim, and it must be dismissed.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1.  Defendant's partial motion to dismiss is GRANTED in part and DENIED in part;

2.  Defendant's motion to dismiss the ADA hostile work environment claim (Count I, Section 3) is GRANTED;

3.  Defendant's motion to dismiss the ADA disability discrimination claim (Count I, Section 1) is DENIED;

4.  Defendant shall file an answer to the remaining claims on or before January 24, 2022.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  January 3, 2022
        Utica, New York.